UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

DONALD DEWAYNE BROWN,               )
                                    )
            Plaintiff,              )
                                    )
    vs.                             )   Case No. 1:19 CV 229 ACL
                                    )
ANDREW M. SAUL,                     )
Commissioner of Social Security     )
Administration,                     )
                                    )
            Defendant.              )

**MEMORANDUM**

Plaintiff Donald Dewayne Brown brings this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the Social Security Administration Commissioner's denial of his

application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Brown's severe impairments,

he was not disabled as he had the residual functional capacity ("RFC") to perform work existing

in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with

consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is

presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

**I.   Procedural History**

Brown protectively filed his application for Title II benefits on August 25, 2016.   (Tr.

15, 27.)   He claimed he became unable to work on September 13, 2010, due to anxiety,

depression, a lower back impairment, weakness and numbness in his legs, a left arm impairment, a finger impairment, and restless leg syndrome.   (Tr. 299.)   Brown was 42 years of age at his alleged onset of disability date.   His application was denied initially.   (Tr. 102-06.)   Brown's claim was denied by an ALJ on March 6, 2019.   (Tr. 15-27.)   On October 24, 2019, the Appeals Council denied Brown's claim for review.   (Tr. 1-4.)   Thus, the decision of the ALJ stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Brown first argues that his "physical and mental disabilities are too difficult to overcome."   (Doc. 20 at 18.)   Brown next argues that "the testimony of vocational rehabilitation expert Dr. Magrowski does not support the ALJ's conclusion."   *Id.* at 21.

## II.   The ALJ's Determination

The ALJ first found that Brown meets the insured status requirements of the Social Security Act through December 31, 2021.   (Tr. 17.)   He stated that Brown has not engaged in substantial gainful activity since his alleged onset date of September 13, 2010.   *Id.*   In addition, the ALJ concluded that Brown had the following severe impairments:   lumbar degenerative disc disease, status-post L4-S1 fusion; generalized anxiety disorder; panic disorder; and major depressive disorder.   *Id.*   The ALJ found that Brown did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.   (Tr. 18.)

As to Brown's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: he can occasionally balance, stoop, kneel, and crouch but never crawl or climb ladders, ropes, and/or scaffolds.   The claimant can occasionally reach overhead

> with the bilateral upper extremities.   He can attend to and carry
> out routine, repetitive tasks but not at a production rate pace (e.g.
> assembly line work).   Additionally, the claimant can only
> occasionally interact with the public and coworkers.

(Tr. 20.)

The ALJ found that Brown had no past relevant work, but was capable of performing

work existing in substantial numbers in the national economy.   (Tr. 26.)   The ALJ therefore

concluded that Brown was not under a disability, as defined in the Social Security Act, from

September 13, 2010, through the date of the decision.   (Tr. 27.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability
> insurance benefits protectively filed on August 25, 2016, the
> claimant is not disabled under sections 216(i) and 223(d) of the
> Social Security Act.

*Id.*

## III.   Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial

evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389,

401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less

than a preponderance of the evidence, but enough that a reasonable person would find it adequate

to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This

"substantial evidence test," however, is "more than a mere search of the record for evidence

supporting the Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir.

2007) (internal quotation marks and citation omitted).   "Substantial evidence on the record as a

whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal

quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974,

977 (8th Cir. 2003).   Put another way, a court should "disturb the ALJ's decision only if it falls

outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015)

(citation omitted).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or that has lasted or can be expected to last for a continuous period of not less than

twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant

has a disability when the claimant is "not only unable to do his previous work but cannot,

considering his age, education and work experience engage in any kind of substantial gainful

work which exists … in significant numbers in the region where such individual lives or in

several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social

Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the

regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First,

the Commissioner will consider a claimant's work activity.   If the claimant is engaged in

substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see "whether the claimant has a severe impairment that significantly limits the

claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343

F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight

abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental

limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id*.   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a,

416.920a.   The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.   *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).   If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent."   20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).   The Commissioner must then rate the degree of functional loss resulting from the impairments.   *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3).   Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities.   *See id.*   Next, the Commissioner must determine the severity of the impairment based on those ratings.   *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c).   If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder.   *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).   This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders.   *See id.*   If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment.   *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV.   Discussion

Brown's first argument is that his "physical and mental disabilities are too difficult to overcome."   (Doc. 20 at 18.)   Brown does not challenge any of the ALJ's specific findings or point to any alleged legal error.   Instead, he highlights his job history, work injuries, and alleged limitations.   *Id.* at 18-21.   Brown next argues that "the testimony of vocational rehabilitation expert Dr. Magrowski does not support the ALJ's conclusion."   *Id.* at 21.   In this claim, Brown

refers to the vocational expert's testimony regarding limitations that were not found by the ALJ, but that Brown believes should have been included.   A reading of Brown's Brief (Doc. 20) in conjunction with his Reply (Doc. 28), reflects that he is ultimately challenging the ALJ's RFC determination.   He also raises claims regarding the ALJ's credibility analysis, evaluation of the medical opinion evidence, and step five determination.   The undersigned will discuss these claims in turn.

As an initial matter, the undersigned notes that Brown has received extensive treatment for his physical and mental impairments during the relevant period of September 2010 through March 2019.   Brown's physical impairments primarily stem from three work injuries, which resulted in multiple surgeries, periods off work, and workers' compensation claims.   Brown did not return to work following his last work injury, occurring on February 22, 2016.   For background, the undersigned provides the following brief summary of Brown's injuries and related treatment:

In 1987, Brown began working at an aluminum smelter as a pot re-conditioner, which involved heavy manual labor.   On September 13, 2010, Brown developed acute lumbar back pain when he was using a crowbar to separate two catwalks.   In July of 2011, after conservative treatment failed, Brown underwent an anterior and posterior lumbar fusion from L4 through S1, performed by Dr. James Coyle.   (Tr. 381.)   Brown saw pain management physician Gregory H. Smith, D.O., for continued complaints of low back and lower extremity symptoms following surgery.   (Tr. 849-72.)   Dr. Smith prescribed pain medication, including hydrocodone,[1] which Brown reported provided about 50 percent relief.   (Tr. 867.)

---

[1] Hydrocodone is an opioid analgesic indicated for the relief of moderate to moderately severe pain. *See Physician's Desk Reference ("PDR")*, 605 (70th Ed. 2016).

Following surgery, Brown complained of numbness and tingling in the left ulnar-sided forearm and left fourth and fifth digits.   (Tr. 1162.)   He was diagnosed with ulnar neuropathy that was believed to be related to his surgery.   (Tr. 627)   Dr. Knight performed a left cubital tunnel release in October 2011, after which there were no improvements in his symptoms.   (Tr. 651-52.)   Subsequent to that he was referred to Dr. David Brown, who performed a second surgery—a left ulnar nerve transposition—on March 15, 2012.   (Tr. 1003-1005.)

On February 9, 2016, Brown was using a ninety-pound jackhammer held in a sideways position at work.   He developed a marked increase in his back pain, as well as the recurrence of bilateral lower extremity pain radiating down to his feet.   (Tr. 1181.)   He also reported an increase of weakness in his feet that caused him to stumble while climbing steps or getting out of the bathtub.

On February 22, 2016, Brown was unhooking cables at work when he experienced pain in his buttocks.   A marble-sized mass protruding from his rectum was found on examination. Brown underwent surgical incision and drainage of a thrombosed hemorrhoid performed by Dr. Loring Helfrich.   (Tr. 1343.)   Brown reported significant improvement following removal of the thrombosed hemorrhoid, but complained of a small external hemorrhoidal tag.   (Tr. 1340.) Dr. Helfrich performed a rubber band hemorrhoidectomy of the external hemorrhoid on April 4, 2016.   (Tr. 1338.)

Brown suffered a fracture to his right hand on June 17, 2018.   (Tr. 1768-77.)   The ALJ concluded that this "impairment fails to meet the durational requirement per the Regulations in that this impairment occurred fewer than twelve months ago and the evidence does not suggest that it is expected to last at least twelve months."   (Tr. 18.)   Even so, the ALJ found "the claimant's right finger fracture" was "a non-severe impairment."   *Id.*

### *Credibility Analysis*

In determining Brown's RFC, the ALJ first assessed the credibility of his subjective

complaints of pain and limitations.   *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) ("The

ALJ must first evaluate the claimant's credibility before determining a claimant's RFC.");

*Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2002) (same).

Brown alleged disability based on a number of physical symptoms, including chronic

back pain, which he claimed limits his abilities to sit, stand, and walk; radiating lower extremity

pain; lower extremity numbness/weakness; left arm numbness; problems bending, kneeling,

squatting, reaching, climbing, and using his hands; and falling frequently, which necessitates a

cane when ambulating.   (Tr. 21, 44-73, 313-19.)   Additionally, Brown reported mental health

symptoms, including depressed mood, anxiety, concentration difficulties, and problems getting

along with others.   (Tr. 24, 44-45, 65-68.)

In analyzing a claimant's subjective reports, the ALJ considers the entire record,

including: medical records; statements from the claimant and third parties; the claimant's daily

activities; the duration, frequency and intensity of pain; the dosage, effectiveness, and side

effects of medication; precipitating and aggravating factors; and functional restrictions.   20

C.F.R. §§ 404.1529, 416.929; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).   The

Court defers to the ALJ's assessment of the claimant's subjective complaints if that assessment is

supported by good reasons and substantial evidence.   *Nash v. Comm'r, Soc. Sec. Admin.*, 907

F.3d 1086, 1090 (8th Cir. 2018); *see also Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008).

Here, the ALJ provided several valid and well-supported reasons for discounting Brown's

subjective reports.   The ALJ first found that, although the record described findings that would

limit Brown's overall functioning, the objective medical evidence as a whole, including

diagnostic tests and physical examinations, failed to support the alleged severity and limiting effects of his degenerative disc disease.   (Tr. 21.)   For example, the ALJ cited the following findings from diagnostic and imaging studies:

- A lumbar MRI performed in May 2011 described only "mild" posterior disc bulging at L4-5 and a "small" disc protrusion at L5-S1; "mild" facet joint degenerative changes at L3-4 and bilaterally at L4-5 and L5-S1; with no significant disc abnormality or foraminal stenosis at T2-L1, L1-2, or L2-3. (Tr. 21, 384.)

- A lumbar x-ray performed in July 2011 described a "stable" metal fixation and intervertebral body fusion with no evidence of suspicious interval change.   (Tr. 21-22, 677.)

- A November 2011 lumbar x-ray was unremarkable, noting intact fusion hardware and normal vertebral body alignment.   (Tr. 22, 693.)

- A January 2012 lumbar x-ray noted some posterior facet sclerosis at L4-5 and L5-S1 but no evidence of fracture.   (Tr. 22, 699.)

- An August 2012 x-ray revealed some osteoarthritis changes of the apophyseal joints but normal spinal alignment, well-preserved vertebral body heights, and no evidence of subluxation, excess motion, fracture, or spondylosis.   (Tr. 22, 818.)

- A September 2012 lumbar CT scan demonstrated only "mild" degenerative changes at L2-3 and "mildly" bulging discs at L3-4.   (Tr. 22, 814.)

- A March 2016 lumbar CT scan showed "mild" central canal stenosis and "mild" foraminal stenosis at L3-4 due to degenerative disc bulging, but no changes from a previous study; and "mild" foraminal stenosis, but no significant central canal or foraminal stenosis.   (Tr. 22, 1367.)

- A July 2016 lumbar x-ray described "minimal" intervertebral disc height loss consistent with degenerative disc disease, but preserved vertebral body height and no evidence of significant listhesis.   (Tr. 22, 1434.)

- A July 2016 lumbar MRI showed "mild-to-moderate" bilateral foraminal stenosis at L3-4 but normal vertebral body heights/alignment, normal spinal

cord, normal lordotic curvature, and well-maintained intervertebral discs above the fusion levels.   (Tr. 22, 1435-36.)

- An electromyography and nerve conduction study performed in July 2016 revealed only "mild-to-moderate" right -sided L5-S1 lumbar root level lesions.   (Tr. 22, 1442.)

The ALJ next discussed findings from physical examinations, noting examinations were "generally unremarkable."   (Tr. 22.)   For example, at Brown's March 6, 2017 consultative internal medicine examination, Dr. Barry Burchett, M.D., noted decreased lumbar range of motion and decreased left lower extremity strength, but full grip strength, full right lower extremity strength, normal spinal curvature, intact sensation, and normal cervical range of motion.   (Tr. 22, 1626-28.)   Brown had a positive straight leg raising test, but Hoffman and Babinski's signs were both negative, he exhibited no evidence of paravertebral muscle spasm, no lumbar or cervical tenderness, no lower extremity swelling, and no muscle atrophy.   *Id.*   Brown exhibited some back pain upon squatting, but he was able to walk on his heels and toes and perform tandem gait.   *Id.*   Although he ambulated with a limp, he did not require the use of a handheld device during his evaluation, and he appeared stable at station and comfortable in both the supine and sitting positions.   *Id.*

The ALJ pointed out that other physical examinations described symptoms such as lumbar pain or tenderness, muscle spasms, or limited lumbar range of motion, but found full muscle strength, normal muscle tone/bulk, and intact sensation.   (Tr. 23, 381, 731, 749, 764, 1135, 1301, 1365-66, 1424, 1504, 1670.)   He noted that some physical examinations described antalgic gait, but it was also reflected that Brown did not require the assistance of any orthopedic device for gait stability.   (Tr. 23, 791, 851, 924, 1135, 1162, 1172, 1204, 1366.)   During a September 2016 examination, an examining physician noted that Brown demonstrated a slow

transition from sitting to standing position but "did not exhibit any obvious pain behaviors while sitting."  (Tr. 23, 1480.)

The ALJ next noted that Brown reported improved symptoms with treatment.  (Tr. 23.)  For example, six weeks following his July 2011 back fusion, Brown reported his leg pain was "gone" and that he was walking on a regular basis.  (Tr. 23, 1026.)  Two months later, in November 2011, Brown reported doing "very well" overall, and indicated he was "walking two to three miles per day."  (Tr. 1024.)  In December 2011, Brown had excellent strength in the lower extremities and a negative straight leg raise test.  (Tr. 23, 1023.)  Brown reported that he was taking pain medication only at night.  *Id.*  His surgeon, Dr. Coyle, found he could lift up to twenty pounds at work at that time.  *Id.*  The ALJ concluded from this evidence that, although Brown continues to suffer from chronic lower back and leg pain following surgery, he reported improved symptoms with conservative treatment and pain medication.  (Tr. 23.)  "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004).

The ALJ properly found that the imaging studies and examinations discussed above detract from Brown's allegations of disabling pain.  *See Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) (ALJ may discount subjective complaints that conflict with medical records).

The ALJ next stated that Brown worked for much of the period at issue—until February 2016 (Tr. 23, 43.)  His alleged onset of disability date was September 13, 2010.  In February 2013, Brown told workers' compensation physician Russell C. Cantrell, M.D., that he would like to return to work given improvements in his back.  (Tr. 23, 1016.)  Brown reported that he would be permitted to sit periodically throughout the day upon his return, which would minimize his lumbar back pain complaints.  (Tr. 1017.)  Dr. Cantrell found that Brown could return to

work in an unrestricted capacity, given the decreased physical demands that Brown reported would be required of him.   *Id.*   Brown returned to work at a different position, earning $70,000 in 2014 and $90,000 in 2015.   (Tr. 39.)   When Brown's employer eliminated this position due to economic lay-offs, he returned to heavy or very heavy work, and was injured while operating a ninety-pound jackhammer.   (Tr. 24, 61.)

A plaintiff's ability to perform even some work may be considered as part of an ALJ's analysis.   *See Medhaug v. Astrue*, 578 F.3d 805, 815 (8th Cir. 2009) (ALJ properly considered the employment plaintiff maintained after the alleged onset of disability, because working generally demonstrates an ability to perform substantial gainful activity); *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (plaintiff's work history is relevant); *Polaski*, 739 F.2d at 1322 (work history is one factor to consider in analyzing a plaintiff's subjective complaints); *Gowell v. Apfel*, 242 F.3d 793, 798 (8th Cir. 2001) (finding it relevant to disability determination that claimant was able to work "for years with her impairments"); *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that [the plaintiff's] daily activities, including part-time work...were inconsistent with her claim of disabling pain").   *See also* 20 C.F.R. § 416.971 ("The work...that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level").   Thus, the evidence of record showing Brown was able to work during a large part of the relevant period, even if in an accommodated position, is relevant to the analysis of Brown's allegations of disabling pain.   During the administrative hearing, Brown's attorney stated that a 2016 onset date would be "more reasonable" (Tr. 40), however, the alleged onset date was not amended accordingly.

Further, Brown testified that he ultimately stopped working because his employer filed for bankruptcy.   (Tr. 62-64.)   Brown explained that he had recovered from his 2016 injury by this time.   (Tr. 64)   The fact that Brown stopped working for reasons other than his alleged disability detracts from his credibility.   *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (finding it relevant to credibility that claimant leaves work for reasons other than for claimant's medical condition).

The ALJ also found that the objective medical evidence failed to support the alleged severity and limiting effects of Brown's mental health impairments.   (Tr. 24.)   He noted that mental examinations occasionally reflected symptoms of anxious or depressed mood and social isolation, but described cooperative behavior, appropriate grooming, normal speech, linear thought processes, intact memory, intact concentration, and normal insight and judgment.   (Tr. 24, 1150, 1154, 1356, 1365, 1388, 1440, 1489, 1493, 1670, 1677, 1746, 1757, 1764.)   Further, the ALJ stated that Brown reported improved symptoms with psychotropic medications, resulting in assessments of a stable mood.   (Tr. 24, 1154, 1303, 1493, 1714, 1718.)   Finally, the ALJ noted that Brown never required psychiatric hospitalization.   (Tr. 24.)   Of course it is also significant that Brown was able to work for many years with his mental impairments (Tr. 1536), including for six years after his alleged onset of disability.

The undersigned finds that the ALJ did not err in finding Brown's subjective complaints were not entirely consistent with the record.

### Medical Opinion Evidence

Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including his symptoms, diagnoses, and prognoses; what he can still do despite his impairments; and his physical and mental

restrictions.   20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1) (2017).[2]  The Regulations that are applicable in this case require that more weight be given to the opinions of treating sources than other sources.  *Willcockson v. Astrue,* 540 F.3d 878, 880 (8th Cir. 2008); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).   A treating source's assessment of the nature and severity of a claimant's impairments should be given controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.   20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Forehand v. Barnhart*, 364 F.3d 984, 986 (8th Cir. 2004).   This is so because a treating source has the best opportunity to observe and evaluate a claimant's condition,

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

In determining Brown's RFC, the ALJ discussed the opinion evidence.   He stated that multiple medical source statements indicated that Brown was capable of performing light work. (Tr. 23.)   For example, in December 2011, Dr. Coyle found that Brown was capable of returning to work at light duty, lifting no more than twenty pounds.   (Tr. 24, 802.)   Although not specifically discussed by the ALJ, Dr. Cantrell also found that Brown was capable of performing light work.   (Tr. 1182.)   In March 2016, Brown saw Dr. Cantrell for evaluation of his back and

---

[2]In March 2017, the Social Security Administration amended its regulations governing the evaluation of medical evidence.   For evaluation of medical opinion evidence, the new rules apply to claims filed on or after March 27, 2017.   *See* 20 C.F.R. §§ 404.1520c, 416.920c. Because the claims under review here were filed before March 27, 2017, the Court applies the rules set out in 20 C.F.R. §§ 404.1527 and 416.927.

bilateral lower extremity pain he attributed to the February 9, 2016 work injury.   (Tr. 1180.)
Dr. Cantrell recommended that Brown undergo an updated CT scan of his lumbar spine.   Dr.
Cantrell indicated that the MRI revealed "only mild central canal stenosis and mild bilateral
neuroforaminal exit stenosis, which was considered not significantly changed compared to the
prior exam of September 5, 2012."  (Tr. 1185.)   Dr. Cantrell found Brown was at maximum
medical improvement and placed him on permanent restrictions of lifting less than 20 pounds,
pushing and pulling less than 150 pounds, and avoiding repetitive bending.   *Id.*

The ALJ next discussed the opinion of the non-examining State agency physician,
Kenneth R. Smith, M.D.   On March 31, 2017, Dr. Smith expressed the opinion that Brown was
capable of performing light work with the following additional limitations: frequently balance
and climb ramps and stairs; occasionally stoop, kneel, crouch, and climb ladders, ropes, and
scaffolds; could never crawl; could occasionally reach overhead, and finger and feel on the left
side.  (Tr. 95-96.)   The ALJ accorded some weight to Dr. Smith's opinion.   (Tr. 25.)   He
explained that Dr. Smith was an expert who based his opinion upon a thorough review of the
medical evidence.   (Tr. 24.)   *See Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) (no error in
considering an agency consultant's opinion along with the medical evidence as a whole, where
the opinion was consistent with the evidence).   The ALJ stated that Dr. Smith's opinion that
Brown was limited to light work was consistent with the overall record demonstrating
degenerative disc disease with symptoms of antalgic gait, limited range of motion, and back
pain.   *Id.*   He found that Dr. Smith's limitation regarding fingering and feeling, however, was
not supported by the record.   (Tr. 25.)   The ALJ stated that Brown's ulnar deficit improved
following his nerve transposition procedure.   In fact, in October of 2012, Brown's surgeon
returned him to full work duty with no hand-related restrictions following his nerve transposition

surgery.   (Tr. 25, 1005.)   Finally, the ALJ indicated that the record supports postural limitations as well.   (Tr. 25.)

With regard to Brown's mental limitations, the ALJ considered the opinion of State agency psychologist Linda Skolnick, Psy.D.   On March 17, 2017, Dr. Skolnick expressed the opinion based upon a review of the record that Brown had only mild limitations and that his mental impairments were non-severe.   (Tr. 94.)   The ALJ assigned "little weight" to this opinion, noting that the record reflected mental health-related symptoms of depressed mood, anxiety, irritability, and social isolation for which Brown sought psychiatric treatment.   (Tr. 25.) The ALJ determined that Brown's symptoms would cause more than minimal work-related functioning limitations and therefore included limitations in Brown's RFC.

Brown first argues that the ALJ erred in failing to give controlling weight to the opinion of "treating neurosurgeon" Dr. Kevin Vaught.

Brown was referred to Dr. Vaught for an evaluation of his lower back and bilateral leg pain on June 15, 2016, in connection with his workers' compensation claim.   (Tr. 1363.)   Dr. Vaught ordered an updated MRI of the lumbar spine, and EMG and nerve conduction studies of the lower extremities.   (Tr. 1373.)   At a July 18, 2016 follow-up appointment, Dr. Vaught indicated that EMG and nerve conduction testing revealed evidence of nerve abnormalities at the L5-S1 level corresponding with his prior lumbar surgery.   (Tr. 1390.)   The lumbar MRI revealed no evidence of hardware failure, and only mild foraminal stenosis bilaterally at L3-4. *Id.*   Dr. Vaught found no indication for neurosurgical intervention and referred Brown to a pain management physician.   *Id.*   He found that Brown could return to work with restrictions of lifting no more than ten pounds; no highly repetitive bending, stooping, or twisting; no overhead

work; no flexion or extension of the spine; and sedentary work only.   (Tr. 1391.)   Dr. Vaught

recommended that Brown see a physiatrist for an evaluation of his future work capabilities.   *Id.*

First, the record does not support Brown's characterization of Dr. Vaught as a "treating"

physician as that term is defined in the Regulations.   The Regulations define a "treating source"

as a claimant's "own physician, psychologist, or other acceptable medical source who provides

you, or has provided you, with medical treatment or evaluation and who has, or had had, *an*

*ongoing treatment relationship with you.*"   20 C.F.R. § 404.1502 (emphasis added).   The record

contains no evidence that Dr. Vaught had an ongoing treatment relationship with Brown.

Instead, the record reveals that Dr. Vaught saw Brown on only two occasion—for an initial

consultation and then for follow-up after imaging—for a neurosurgical consultation in

connection with his workers' compensation claim.   Because Dr. Vaught was not a treating

physician, his opinion was not entitled to controlling weight.

Second, Dr. Vaught's opinion that Brown was capable of only sedentary work is

contradicted by other medical evidence of record.   As discussed above, multiple sources found

that Brown was capable of performing light work.   One of these sources, Dr. Cantrell—a

physical medicine and rehabilitation specialist at Orthopedic Sports Medicine & Spine Care

Institute—addressed Dr. Vaught's opinion.   Dr. Cantrell had seen Brown on multiple occasions

during the relevant period in connection with his work injuries.   In an August 16, 2016 report,

Dr. Cantrell indicated that he had reviewed the July 2016 diagnostic reports and Dr. Vaught's

records and found no "evidence of instability, instrumentation failure, or pseudo-arthrosis

explanatory for the chronicity of his back pain complaints."   (Tr. 1476.)   Dr. Cantrell stated that

he did not "see any reason to alter the restrictions I had set forth previously in March of 2016."

*Id.*   Due to the inconsistencies in the record, the ALJ did not err in failing to accord weight to Dr. Vaught's consultative opinion.

Brown next argues that the ALJ erred in "completely disregarding the opinions of Vocational Rehabilitation Expert J. Stephen Dolan, M.A., C.R.C."   (Doc. 20 at 23.)   Brown contends that Mr. Dolan, unlike the vocational expert that testified at the hearing, interviewed Brown and administered testing.   Mr. Dolan determined based on Brown's age, education, test results, work history, and restrictions found by Dr. Vaught, Brown "no longer had access to a reasonably stable labor market."   (Tr. 334.)

Contrary to Brown's assertion, the ALJ did not ignore this opinion.   Rather, he discussed the opinion and found it was "beyond the scope of Mr. Dolan's expertise" and "conclusory in nature."   (Tr. 25.)   He further found that it was inconsistent with the overall record that demonstrates Brown is capable of performing light work.   *Id.*   The ALJ therefore accorded the opinion "little weight."   *Id.*   The ALJ properly assessed Mr. Dolan's opinion.   Mr. Dolan is not a medical professional whose opinion is entitled to weight under the relevant regulations. Moreover, his opinion regarding Brown's "access to a stable market" was based on the assumption that Brown was capable of only sedentary work, which is inconsistent with the evidence of record.

Thus, the ALJ did not err in evaluating the opinion evidence.

### *RFC Determination*

The ALJ determined that Brown was capable of performing light work with the following additional limitations: can only occasionally balance, stoop, kneel, crouch, and reach overhead with the bilateral upper extremities; can never crawl or climb ladders, ropes, and/or scaffolds;

can attend to and carry out routine, repetitive tasks, but not at a production rate pace; and can only occasionally interact with the public and coworkers.   (Tr. 20.)

A claimant's RFC is "the most a claimant can do despite h[is] limitations."  *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)).   "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'"  *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).   "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC."  *Pearsall*, 274 F.3d at 1217.   "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace."  *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008)).   However, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner."  *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007).

The Court finds that the evidence relied upon by the ALJ constitutes substantial evidence, including medical evidence, to support the RFC assessment.   The ALJ considered the objective medical evidence, including the results of imaging and other testing, and findings on examination.   He also properly weighed the opinion evidence.   The ALJ's determination that Brown was capable of performing a range of light work is consistent with the opinions of Drs. Coyle, Barnette, and Smith.   The mental limitations found by the ALJ are greater than those found by the consultative psychologist, which is consistent with the symptoms noted by Brown's mental health treatment providers.   The ALJ's determination is also consistent with Brown's

ability to work during a large part of the relevant period despite his physical and mental impairments.

In his discretion, the ALJ made an RFC finding that did not precisely reflect any of the medical opinions of record.   *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (ALJ is not required to rely entirely on one particular physician's opinion or choose between opinions). A restriction to a limited range of light, routine work, with restricted social interaction adequately accounts for Brown's combination of physical and mental impairments.   Brown has failed to demonstrate that the ALJ's decision was outside the available "zone of choice."

### Step Five Determination

Brown finally argues that the testimony of Dr. Magrowski does not support the ALJ's determination that Brown is not disabled.   Brown contends that Dr. Magrowski testified that the jobs he identified could not be performed if the individual required a cane for ambulation, required a thirty-minute nap during each shift, or if the individual would miss one to three days of work each month.

At step five of the sequential evaluation process, the Commissioner must prove "first that the claimant retains the RFC to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform."   *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004) (quoting *Nevland*, 204 F.3d at 858).   "The Commissioner may rely on a vocational expert's response to a properly formulated hypothetical determination.   The undersigned has determined that this determination is supported by substantial evidence.   The limitations Brown references were not found to be credible by the ALJ and were not, therefore, included in the hypothetical.   Dr. Magrowski testified that an individual with Brown's characteristics and with the limitations from the ALJ's properly phrased

question to meet [their] burden of showing that jobs exist in significant numbers which a person with the claimant's residual functional capacity can perform." *Sultan v. Barnhart*, 368 F.3d 857, 864 (8th Cir. 2004).   The Eighth Circuit has held "testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." *Tucker*, 363 F.3d at 784.

Here, the hypothetical posed to the vocational expert was consistent with the ALJ's RFC determination.   The undersigned has determined that this determination is supported by substantial evidence.   The limitations Brown references were not found to be credible by the ALJ and were not, therefore, included in the hypothetical.   Dr. Magrowski testified that an individual with Brown's characteristics and with the limitations from the ALJ's properly phrased hypothetical was capable of performing jobs existing in significant numbers in the national economy, such as packager, routing clerk, and mail clerk.   (Tr. 26, 78.)   Thus, the ALJ's decision finding Brown not disabled is supported by substantial evidence.   *See Tucker*, 363 F.3d at 784.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

> /**s**/ Abbie Crites-Leoni
> ABBIE CRITES-LEONI
> UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of March, 2021.